Please call the next case. Allotments 21-23, Craig Lance, and Alvin Becker. May I have the lawyer's approach to please introduce yourself to the court. Good morning, your honors. I'm Alvin Becker. I'm the attorney for the Appellant, Craig Lance, and I'm here this morning to argue this position. Good morning, your honors. Assistant Attorney General Carl Helitz with the Department of Justice. Okay, let's proceed. In light of your earlier observation with regard to the time, if you'll permit me to take both the opening and the rebuttal, and take not more than 15 minutes, it would be greatly appreciated. Thank you very much for that. So in 2007, my client pleads guilty to an information for filing a false federal tax return, a personal tax return. He's been a licensed insurance producer for well over 30 years, and according to the unchallenged record proof, has never once been disciplined by the Director of Insurance for any misconduct that ever occurred. In connection with the criminal proceeding, besides waiving the indictment and waiving the statute of limitations, a defective judgment, and I don't know why it was defective, the record doesn't tell us that, a defective judgment was entered November 20, 2007, and that being a judgment of conviction. The judgment was modified or amended February 26, 2008. Lamb's lawyer, that's me, notified the Illinois Director of Insurance on January 16, 2008 that Lamb's conviction had occurred. That was at least six weeks prior to the entry of the amended judgment. Not too long afterwards, the Director entered an order revoking Lamb's insurance producer license. That order, of course, is an order which simply says, I decide to revoke your license. If you want to have a trial, you can. And we exercised our rights to have that trial. We had that trial. During the course of the trial – Let me ask you one question. Is there anything in the record – I'm sorry to interrupt. Is there anything in the record about what occurred between the time – Respectfully, Your Honor, Mr. Lamb did not sign any form. I signed the form, which was nothing more, and it's in the record. It is a letter that I sent to the Illinois Director of Insurance notifying him of the conviction. I think what I meant to refer to was there was an application that Mr. Lamb signed. Of course. I could answer that question. Okay, maybe I spoke. So there was an application that Mr. Lamb signed on a particular day, and then that was transmitted on a later day, and included in that application was the notification. Was my letter to the director saying it's unusual that you get a renewal? It was a renewal application. It's unusual to get one from a lawyer, and the reason you're getting the renewal lawyer is the conviction. We're telling you about the conviction. We certainly didn't keep it a secret. It was part of the renewal application. But there's something in the briefs about how he signed that renewal application on one date, which was a more timely date than the date that that application was actually submitted. But there's nothing in the record about what happened in the interim, is there? Judge, I would be misleading the panel if I were to suggest that the record is unclear in that regard. Yes, Mr. Lamb signed the renewal application for a license, for example, on January 1st, but that was transmitted whatever the date he signed it with my letter to the director two weeks later. So you should have no doubt that we are not making that argument before you. That would be a false argument. So after – and, by the way, John Theis, he is a criminal lawyer, testified on his behalf in this case, and so did somebody else testify on his behalf with regard to the nature of his business and what he does. The hearing officer filed an opinion and decision revoking his license. The director signed off on that revocation. We filed an administrative review proceeding, and the case was assigned to his honor, Judge Martin Agron. Three things happened that we need to talk about in that proceeding. The first thing that happened is the hearing officer and the director found that Lamb was guilty of dishonorable conduct in connection with his business. And clearly that was not the fact. There was a requirement that there be in connection with his business, and there, beyond reasonable doubt, we demonstrated that this errant – I'm not apologizing, that we're not trying to go behind the conviction. There was a conviction. It had nothing to do with his business. I cannot conceive for a second that his false federal 1040 return could have any way implicated. Honesty or dishonesty or lack of forthrightness with regard to any customer ensured that he dealt with over 30 years. That's what Judge Agron – I mean, that's what Judge Agron – You bet. We've got a long way to go and a little time to get there. So Judge Agron grants the application for administrative review and sends it back for further proceedings in connection with his decision, including the punishment that was meted out in this case, revocation. So – Wait a minute. Now we're getting to the point. Did the director comply with Agron's order? In my opinion, it could not have complied with – Okay. Tell us why. It could not have complied with his order because every lawyer who was trained in Anglo-American law, including due process of law and the anathema that we have to start chamber proceedings, could never have understood that the most important aspect of this case, because he had pleaded guilty to this offense, the important aspect of this case is what punishment is deserving for Craig Lamb. How could Judge Agron have ever anticipated that that proceeding would be behind closed doors? It is not possible that he ever could have said that. In that regard, I have cited, and your honors gave me permission to cite, after our final brief was in in this case, a decision of this court in the Caffin case. Caffin involved an errant physician whose license was revoked. We know. I wrote it. I know you did. Yes. It would be shocking to me, and I hope shocking to the panel, because the last page of that decision said that it's remanded for further proceedings not inconsistent with this decision. It would be, nobody could believe that any member of the panel that decided that case ever could have contemplated that some hearing officer could have taken that decision, gone into his office and written something and said, instead of revocation it will be four years and 11 months, and you don't need an opportunity to be here. That just can't be. That's not the traditions that we're steeped in. In the Caffin decision, the court, this court, drew analogies to other errant physicians. Properly and rightly so, because it's the fair thing to do. I tried to do that in this case after I read Caffin, and frankly all of the reported decisions with regard to insurance producer licensees are people who stole money. They stole money from insurance companies or they stole money from their insurance companies or their customers. Or one man was even smart enough to engage in bookmaking and he was using that as a front. Clearly there's no parallel. I did find something. I wish I would have found it earlier, and I'm not being sarcastic, but lawyers who become 70 don't think as quick as lawyers who are 40. And it dawned on me that there is something that I think the court might appreciate that could draw important analogies. Lawyers. Lawyers have a long history, unfortunately, of being convicted of filing false income tax returns. And there is a well-established judicial landscape and footprint of what the Illinois Supreme Court does with those lawyers. And I had this epiphany Tuesday night. I wish I would have had it earlier because it's unfair to spring it on anybody, but that's what I had. And what I found was a man named William John Scott. You may not recognize that name immediately, but he happened to have been the fourth time elected Attorney General of the state. And he was convicted of the same offense that Greg Lamb was convicted of. He was sentenced to a year and a day. Greg Lamb, you know what he got. He got 30 days. In the Scott decision, the courts went through, because they wanted to bring predictability to what happens to an errant lawyer who is convicted of this. And they went through seven cases. Frankly, they range from censure. There are two censure cases to cases, one-year suspension, two-year suspension, three-year suspension. And it's interesting that in the Scott case, I will file a motion drawing the court's attention to it. I only discovered this Tuesday night because that's when I had this realization. It is reported at 98 Illinois 2nd at page 9, but I will file a motion and bring it to everybody's attention. I apologize that I didn't think of it earlier, but I did. The interesting thing about, and I'm going to conclude with these remarks, the interesting things about the Scott decision was he got two years. But it was two years from the date that they suspended him interimly at being the date of his conviction. If you add up the dates that Greg Lamb has been dispossessed of his Illinois producer's license as an insurance producer, it is now more than almost two and a half years because of the two revocations. I would ask that Your Honors agree with me, reverse this, and apologize for saying this, if Your Honors agree with me and reverse it, either do so respectfully with specific instructions and or reverse it and ask that it be done before a hearing officer other than the same hearing officer we had in this case. If you have no other questions, I'll sit down and thank you very much for your time. I know why it's a short morning today. As I said earlier, if I may have one or two minutes on rebuttal, that would be much appreciated. Thank you again. Hi, Your Honors. Again, Illinois Assistant Attorney General Carl Elitz for the Department of Insurance. Your Honors, I'm not familiar off the top of my head with Scott's case. I assume that I'll get a motion and we'll deal with it then. The issue here is really whether there are independent grounds here for the revocation and the $5,000 civil penalty. And as Judge Preston found, there certainly are here. The Illinois Insurance Code is quite clear. It's the conviction of the felony which gives the director of insurance the discretion as to choose what the correct punishment should be for the crime that was committed here, not the Illinois Supreme Court as in the Scott case. Also, there was a failure to report, which is also independent grounds for finding that the insurance producer's license in this case should have been revoked. The director abused his discretion in initially deciding on the punishment because, as Judge Hagren determined, there were errors in law in the analysis. But when those errors were corrected and sent back to the director to reconsider the case, to re-examine the record in light of Judge Hagren's decision, the director did what he was supposed to do. And there's no error here suggested at all. Let me ask you a question. Judge Hagren, in his opinion, noted that with regard to subsection B of the particular provision, that the hearing officer inappropriately did not take into account the lapse of time between the end of the and going forward and said that there was an error in that respect. And what he was pointing to was the fact that the criminal conduct occurred in 2000 and the plea ended in 2000. Thank you, Justice. Ended in – well, here's what it says in the order. Director McGrath determined that Mr. Lamb's crime occurred in 2000 and that he pleaded guilty in 2007 and went on to say that in Section 2403.30B, notes that when judging this fact of the duration of time since the criminal activity should be proportionate to the disparity of the conduct, I conclude that the licensee is not sufficiently removed from his criminal activity. So Judge Hagren felt that the Director erred in regard to that analysis. And my question is, when it went back to the hearing officer after Judge Hagren said that the analysis under subsection B was an error, how was that remedied? I didn't see anything in the hearing officer's next findings that took into account the time lapse between 2000 and 2007. We never challenged that. We totally agree with it. So the Director knew at the time of Judge Hagren's decision that it was improper to take into account the short time period between the time of the conviction and the time of the revocation, but that the longer time period was the appropriate one. But that's not even mentioned on remand. No. I mean, if you look at the next findings of fact that concludes there's a law that comes out of the hearing officer, he doesn't even mention it. No, but. So isn't what Judge Hagren is saying is go back and take into account the fact that from 2000 forward is a long period of time, which Director McGrath says he's not sufficiently removed from his criminal activity. And this is we're talking about a situation where somebody files a false income tax return in 2000, and you take away his license nine years later? Respectfully, Your Honor, it was a fraudulent income tax return. Well, I understand. My point is that is there any indication that the hearing officer and the Director heeded Judge Hagren's concern with regard to the fact that subsection B wasn't adequately considered? That's my question. The indication is only that we received the order and it was processed properly. It was read. It was understood. We've never made the argument. So the answer is no? No. The answer is implicit in the decision was that that error was corrected. There was no doubt about that, that Judge Hagren was correct. We never challenged that. The time period looks to the time period of the violation. The factors that the Director is supposed to take into consideration are set by the administrative regulations, and he did that. The factors that the Director decided to emphasize in this case was whether he showed proper contrition for this. But when it's not indicated in the new order, are we supposed to presume that he considered it? Yes, Your Honor. It's beyond presumption. It's not just presumption. You have a case on that point that we're supposed to presume that he considered it? Well, Your Honor, there's no showing of error here by the person who challenged it in the circuit court, which is the plaintiff in this case. The decision of the Director, especially after we have a court order telling us what to do, it should be presumed that the Director complied with it. And there are cases that say the presumption is that government officials in good faith comply with the law. Has that always been the case? I mean, that we should presume that our government officials comply with the law, especially here in Illinois? I mean, should we do that? Should we make that presumption here? I'm being recorded, Your Honor. Yes, you are. Absolutely. Okay. If that's what you believe. But it's true here. You know, Judge Agron's decision was, what, 10 pages, single spaced? It was scholarly legal reasoning, and it was against us. Judge Preston's order was the same. There's a lot of work that went into both of these decisions and a lot of work that went into the Director's decision before that. The factors that the Director is to consider were considered, all eight or nine of them, A through H. That was one of the factors, and that one actually goes in favor of Mr. Lamb. We concede that. But the factors that don't go in favor of Mr. Lamb is that this was a very serious crime. It involved over $70,000. It wasn't filing a false return. It was filing a fraudulent return. With regard to the suggestion that the order wasn't final when it was entered, that was rejected by the trial court specifically. There's nothing to suggest that the modification of the order to correct the sentence affected the validity of the order. It was a final judgment when it was entered, and the notice to the Director came 60 days, 30 days too late. So that is another independent grounds for finding that it was proper to revoke Mr. Lamb's license. Let me ask you this. When Judge Agron says, the court is left with a cloudy impression of the evidence on Section 500-95, that has to do with the disclosure. Yes.  And then he sends the case back and says, again, as the question of Mr. Lamb's violation of 500-95 is unsettled by the record, this case should be reversed for re-evaluation. What is he asking the Director to do with regard to the fact that there's a cloudy impression from the record? To consider whether or not, contrary to what it seemed at the time when he was looking at the case, whether Mr. Lamb had disclosed prior to the 30-day time window. Because it looked like there's a document in the record that's within that 30 days that seems to be showing Mr. Lamb is trying to disclose this. Now, it's to his attorney, but maybe the Director has overlooked something. Maybe Mr. Lamb has overlooked something. But when we went back and looked over the records and considered that argument, the hearing officer said, no, there's nothing here. What we have here is a document that goes from Mr. Lamb to his attorney disclosing the conviction, which is kind of silly since his attorney had been working on the case, I assume, for the seven years that it had been pending. And then it never showed up at our offices. So it was never delivered to the Director. And the statute requires that it be delivered to the Director with all the supporting documents to show what happened and allow the Director to know what happened here. It never came. And, in fact, it never came even after they claimed that the judgment was modified or re-decided. We found out only at the hearing that a modification had taken place. So that's a different reason, an independent reason, and a revocation is a statutory discretionary remedy that the Director has. This case has been kicked around for a very long time. There's no accident here. This was a decision that was made by the Director in his judgment, and we'd ask that the Court defer to that judgment and affirm it. Thank you. Okay. Sheriff Rebuttal. I don't know how a reviewing tribunal, be it the Circuit Court or this Court, can review without an administrative record. There is no administrative record here because it was done. You could call it in camera. I prefer to call it in the Star Chamber. Nobody knows what happened. I heard my learned counsel's argument, this panel, with regard to the notification. How does anybody know that? What is he talking about? Where does it appear anyplace? The answer is it doesn't appear anyplace. With regard to the efforts that Judge Preston put into this case, Your Honors will note he was the same trial judge that this Court reversed in Gavin. I don't understand how, considering Judge Abrams' order, anybody could understand that Lamb's lawyer doesn't get a right to speak on Lamb's behalf with regard to what is an appropriate punishment for Lamb. And in any event, Rebuttal is excessive. I want to ask you the same question I asked the Attorney General. Sure. What do you think about the sentence, the Court is left with a cloudy impression of the evidence, and then he sends it back saying the record is unsettled, so I'm sending it back. What do you think Judge Abrams was saying he wanted done with regard to this cloudy record? More certainty, and the only way you have more certainty, respectfully, is to do it in what we understand to be the adversarial process. I think what they did here in this case is no different than in a criminal case the defendant is found guilty and his lawyer is not permitted to address the tribunal with regard to sentencing. And that's exactly what happened here. We'll make our own decision. We don't need you. That's not how we work in this country. How about present more evidence on that issue? I'm sorry? How about the body allowing you to present more evidence? Yes, ma'am. On that issue. That's the adversarial process. That's Judge Abrams' concern. Sure. Yes, ma'am. I agree. Let me ask you, again, the same question I asked the Attorney General, with regard to the fact that under that subsection B, that there was found to be an error with regard to the way that was evaluated concerning the time lapse between the end of the criminal conduct and the present. Do you have any comment on that? Sure. Where that comes from, Your Honor, is not because I said so. Where that comes from is not because John Price said so. It comes from the judgment of conviction that the late Judge Moran entered, in this case, with regard to Lamb, with a special finding, and it's in the record, that the criminal activity ceased in the year 2000. There should be no doubt what his finding was, and considering the basis of discipline, he is their judgment. Well, that's a special finding in the judgment. Your Honors also know how Judge Whitlow, I call it a lenient sentence. That's chocolate and vanilla. You might not agree that he got a lenient sentence, but the fact is, he did let him go back to work. His home confinement was go back to work. You can do that. And I think under the totality here, Lamb didn't get a fair shake, and that's a due process violation, and respectfully, that needs to be reversed. If you have no other questions, thank you very much for your time. Thank you, Counsel. You guys have given us a very interesting case, very well briefed, very well presented, and we'll take it under advisement.